Stewart, J.
The National Holiness Missionary Society is chartered under the laws of the state of Illinois, and in its articles of incorporation its purpose is stated as follows:
“The object for which it is formed is and shall continue to be to spread Scriptural holiness to the uttermost parts of the earth by establishing, maintaining and conducting missions and missionary work of every kind and character in foreign lands, and all other forms of Christian service as the development of the work may require, in harmony with doctrinal, ethical and spiritual standards of the National Association for the Promotion of Holiness.”
In carrying out its purpose, the society conducts in its own school buildings and missions elementary and high school instruction, together with such art, craft, sanitation, health and hygiene subjects as it deems necessary in the places where its work is carried on. The society’s teaching program is approved, where necessary, by the governments of the countries where its schools are located. No part of the work of the society is carried on in Illinois, but it does operate 53 elementary schools and five Bible training institutions, with a total enrollment in excess of 4,100 students. With the exception of one school on the Mexican border, no part of its work is carried on within the United States and the locus of both its missionary and scholastic work is outside this country. Its schools outside the United States are located in Kenya, British East Africa; Belgian Congo, Africa; Honduras, Central America; and India. Included in the faculties are nurses, doctors, and ministers, as well as men and women trained to teach subjects or *66 dinarily taught in grade and high schools and in Bible instruction. Approximately 74 per cent of the society’s expenditures are made in the operation of its schools, which are open to everyone, irrespective of race or creed, who meets the qualifications of the respective schools.
The income of the society is derived primarily from individuals and groups who contribute on a wholly voluntary basis and no part of the income inures as profit to any individual.
The object of the society is not only set out in its charter but likewise in its constitution, as follows:
“The object of this organization shall be to establish, maintain, and conduct interdenominational missions and missionary work in home and in foreign lands, to spread Scriptural holiness largely through a properly qualified national ministry. To this end departments of evangelistic, medical, educational, industrial, and such other forms of service as required may be developed, making all other forms subservient to the evangelistic emphasis.”
The main question before us is whether the society is an institution of learning within the meaning of Section 5334, General Code, which reads in part as follows:
“The succession to any property passing to or for the use of * * * public institutions of learning or any public hospital not for profit, within this state, or institution of learning or any public hospital not for profit within any state of the United States, which state does not impose an inheritance, estate or transfer tax on property given, devised or bequeathed by a resident thereof to an institution of learning, or any public hospital not for profit, within this state * * * shall not be subject to the provisions of the preceding sections of this subdivision of this chapter. Successions passing to other persons shall be subject *67 to the provisions of said sections to the extent only of the value of the property transferred above the following exemptions * *
Is the society an institution of learning within the purview of the foregoing statute?
It is conceded that the state of Illinois has in its statutes a reciprocal exemption provision similar to the Ohio reciprocal provision. The Department of Taxation contends that, since no part of the work of the society is carried on in Illinois, even conceding it to be an institution of learning, it is not an institution of learning within that state. However, in view of the conclusion to which we have come, it is not necessary for us to pass upon that question.
The rule of construction for statutes providing for exemption from taxation is that they shall be given a strict but reasonable construction. In re Application of Ohave Scholem Congregation, 156 Ohio St., 183, 101 N. E. (2d), 767.
In the case of In re Estate of Friedman, 154 Ohio St., 1, 93 N. E. (2d), 273, there is cited with approval the case of Tax Commission v. Paxson, Admr., 118 Ohio St., 36, 160 N. E., 468, which pronounced the rule that a statute exempting certain legacies from the succession tax should be strictly construed against the exemption.
It is apparent both from the purpose clause in its charter and the declared purpose stated ’ in its constitution that the society is an organization for missionary work in which, as its constitution states, all other forms of its work must be made subservient to the evangelistic emphasis. It is true that in carrying out its great and laudable missionary objectives the society devotes a large part of its income to schools and teaching, yet such educational work is subservient to its main objective of spreading the gospel of Christ in foreign lands.
*68 Although the purpose clause in a charter does not exclusively determine the nature of a corporation, it must be given great consideration in such determination, and the same can be said of the objects of an organization as declared in its constitution.
In the present case the evidence shows that the society does operate according to both its charter and its constitution.
The general secretary of the society, in his testimony, stated:
“A. Well, our primary activities are, as mentioned in the printed statement of purposes, to conduct educational, medical, industrial, and evangelistic work. It means that, while there is, of course, a definite religious emphasis — of course, the words ‘Missionary Society’ imply that — yet, our primary activities center in these different phases of work that I mentioned: the educational, medical, and the industrial.
“Q. The motive behind the organization is a religious motive? This educational and medical work that you carry on is a means to obtain a religious end ? Isn’t your purpose to spread the gospel, the word of Christ? A. That, of course, is one purpose. You see what I mean? In fact, that would be a motivating— what shall I say? An underlying — .”
As the Court of Appeals said:
“We think it is quite clear that, although a large portion of the income of the society is used for its educational activities, yet its primary purpose, the reason for its existence, is to further its religious work. In that respect, it is reasonable to find that education would be of prime importance in the "work of ■spreading ‘Scriptural holiness to the uttermost parts of the earth.’ ” „
The Supreme Court of New Jersey has recently, decided the case of Board of National Missions of Presbyterian Church v. Neeld, Deputy Dir., 9 N. J., 349, 88 *69 A. (2d), 500, which is practically on all fours with the present case, and we hereinafter quote from it with approval.
The New Jersey statute grants inheritance-tax exemption to educational institutions outside the state, where there is a reciprocal arrangement in the state where the educational institution is located, just as our statute grants the same exemption to institutions of learning.
■ In the New Jersey case there was a bequest to the Board of National Missions and the Board of Foreign Missions of the Presbyterian Church.
The Board of National Missions is a New York corporation and its purpose, as stated in its charter, is “the extension of Christianity and the gospel of Christ in all its fullness and His service and all its implications in the United States of America and elsewhere.” In furtherance of its purpose it operates 24 boarding schools and 18 day schools throughout the United States, having an enrollment of nearly 8,000, and, in addition, conducts Sunday schools and Bible schools, with an enrollment of more than 17,000. The board likewise maintains and operates missions, hospitals, dispensaries and community centers.
The Board of Foreign Missions is also a New York corporation organized “for the purpose of establishing and conducting Christian missions outside the continental area of the United States of America, and the general diffusion of Christianity.” It operates 10,052 Sunday schools with an enrollment of 723,000, 1,775 elementary schools with an enrollment of over 150,000, and also medical stations. It seeks “to build mental, physical and spiritual resources for the fullest self-realization by the individual, with complete development of character, personality and inspiration of nationals for the highest services of their community, their nation, their fellowmen and their God.”
The New Jersey Supreme Court said:
*70 ‘ ‘ The claims for exemption here asserted must therefore depend on the appellants qualifying as educational institutions within the intent and meaning of these words as used in the statute. A basic rule of statutory construction is that words used therein ‘should be interpreted according to the most natural and obvious import of the language, without resorting to subtle or forced construction for the purpose of either limiting or extending their operations’ * * *.
“The ordinary meaning of ‘educational institution’ is a place where classes are conducted, such as schools and colleges, not an institution which furnishes some education in no matter what branch, as an incidental adjunct to its main purpose. * *
U # # *
“Every church is engaged in the process of teaching people about Christ or some other deity to the end that those it teaches may be able to lead a more satisfactory and useful life. If we accept the premise that because the teaching of people about Christ and Christianity often necessarily involves the teaching of many other things and that such work can be denoted educational in the statutory sense, then if this thought is followed to its logical conclusion, virtually every religious organization could be classified as an educational institution.
“Certainly the ordinary church of itself would not be considered as within the classification of an ‘ educational institution,’ yet these mission boards far more resemble the ordinary church than they do the ordinary school or college. In the ordinary school or college while religious subjects are taught and religion encouraged it is done in addition to their secular instructions. ' An Episcopalian or Catholic diocese is a religious organization and not an educational one, even though under their jurisdiction they may operate denominational or parochial schools or colleges. *71 These appealing boards are religious organizations even though under their jurisdiction they operate schools or colleges in the ordinary sense. A bequest to a Catholic or Episcopal church or diocese would be taxable as a transfer to a religious organization, whereas a testamentary gift to a particular school operated by the church or diocese would be tax exempt as a transfer to an educational institution. Similarly, a bequest to one of the schools operated by one of the appealing boards would be considered tax exempt as a transfer to an educational institution, but when it is to the boards themselves it must be considered as one to a religious organization. Any other interpretation of the statute would be an unwarranted perversion of the words ‘educational institution’ and as a practical matter would result in the granting of exemptions to virtually every religious organization which the Legislature never intended. ’ ’
We conclude that, under the undisputed evidence in the present case, even though the society does conduct many schools and uses a large part of its income for that purpose, the carrying on of this educational work is merely subsidiary to its main objective of religious and missionary endeavors; and that the bequest to the society was not made to an institution of learning but to an institution whose great work and objective are religious and missionary, the schools of which are a part of the plan in attaining the objective. Therefore, the bequest, not being made to an institution of learning within the meaning of the statute, is not exempt from, the succession tax.

Judgment affirmed.

Weygandt, C. J., Middleton, Matthias, Hart and Zimmerman, JJ., concur.
Taft, J., dissents.